

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| Carletha Stiner, Plaintiff<br>4041 Bowman Boulevard, Apartment 104<br>Macon, Georgia 31210<br>(478)973-1847<br><br>VS<br><br>Defendants:<br>METRO HEALTH MEDICAL CENTER<br>Natalie E. Joseph, MD.<br>Stephen W. Tamarkin, MD.<br>Paul F. Hergenroeder, MD.<br>Michael P. McNamara, MD.<br>Amer Khiyami, MD.<br>Leonidas Castro, MD.<br>A Chang<br>2500 Metro Health Drive<br>Cleveland, Ohio 44109<br>(216)778-7800;<br>PARMA COMMUNITY GENERAL HOSPITAL<br>Joseph Cooper, DO<br>John Lazo, Jr., MD.<br>7007 Powers Boulevard<br>Parma, Ohio 44129<br>(440)743-3000;<br>Vundyala V. Reddy, MD<br>308 Coliseum Drive<br>Macon, Georgia 31217-3859<br>(478)745-6130;<br>Unknown Mental Health MD<br>777 Hemlock Street<br>Macon, Georgia 31201 | )Case Number: 5:13-CV-445<br>)<br>)JUDGE:<br>)<br>)<br>)<br>)<br>)<br>)<br>)COMPLAINT-Medical<br>)Malpractice-Misdiagnosed With<br>)Breast Cancer – Injected With<br>)Sulfur Colloid Which Has Caused<br>)Near Fatal Breast Damage<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## TABLE OF CONTENT

| | |
|---|---|
| Affidavit of Merit | Page 2 |
| Complaint | Pages 3-12 |
| Exhibit A-Physician Service Bill for Biopsy/Lymph Node Removal | Para 1 |
| Exhibit B-Dr. Amer Khiyami Diagnosis | Para 2 |
| Exhibit C-Dr. Michael McNamara | Para 3 |
| Exhibit D-Sulfur Colloid Injection | Para 4 |
| Exhibit E-Photo of Plaintiff Breast | Para 4 |
| Exhibit F-Surgery for Fluid | Para 4 |
| Exhibit G-Dr. Paul Hergenroeder | Para 5 |
| Exhibit H-Dr. Leonidas Castro | Para 6 |
| Exhibit I-Mastectomy Report | Para 8 |
| Exhibit J-Pectoralis Muscle Report | Para 8 |
| Exhibit K-Mammogram Report | Para 9 |
| Exhibit L-Unknown Phychiatric Doctor | Para 10 |
| Exhibit M-Certificate of Medical Condition | Para 11 |
| Exhibit N-CA 27.29 Blood Count | Para 11f |
| Exhibit O-Plaintiff Normal Blood Cell Count | Para 11g |
| Exhibit P-Plaintiff Low Blood Cell Count | Para 11g |
| Exhibit Q-Surgical Recommendation | Para 12 |
| Exhibit R-Prednisolone Information | Para 13 |

1. In accordance with USCs Title 18 and Title 42, chapters §9-3-70 of the Georgia code and §2305.113, §2315.21, and §2323.43 of the Ohio code, the following Defendants are accused of medical malpractice by the Plaintiff, Carletha Stiner who was diagnosed with alleged breast cancer which resulted in removal of some lymph nodes (Exhibit A). The Plaintiff, Carletha Stiner was unfortunately refused prompt, appropriate, and/or accurate medical treatment after the surgery. The Defendants refuse to acknowledge the severe damage caused to the Plaintiff's breast is the result of an injection of sulfur colloid, not breast cancer. The Plaintiff has a damage to the chest area which built up fluid, nearly suffocating the Plaintiff. The alleged cancerous tumor is attached to the chest, and the breast is gone according to one medical report. The Plaintiff has been confused by the Defendants actions throughout this medical diagnosis and has come to realize the non-chalant attitude displayed by the Defendants is because the Plaintiff's white blood cell count does not and did not indicate any sign of disease.

2. On January 8, 2010, Amer Khiyami, MD., conspired to cause harm to the Plaintiff, Carletha Stiner when the Defendant diagnosed the Plaintiff with alleged breast cancer, (Exhibit B). The Plaintiff's white blood cell count did not indicate disease in the Plaintiff's body or breast.

3. On January 5, 2010, Michael P. McNamara, MD., placed clips inside the Plaintiff's right breast during a mammography diagnostic procedure before the Plaintiff was diagnosed with breast cancer (Exhibit C). The Plaintiff's white blood cell count did not indicate disease in Carletha Stiner's body or breast.

4. On January 20, 2010, Defendants Natalie E. Joseph, MD., A. Chang., and Stephen W. Tamarkin, MD., conspired to cause bodily harm to the Plaintiff, Carletha Stiner when the Defendant(s) injected sulfur colloid (Exhibit D) into the Plaintiff's right breast during a surgery to remove lymph node and did not provide proper follow-up medical care or instruction. The sulfur colloid caused the Plaintiff's entire right breast to harden within seven (7) days after the January 20, 2010 surgery to remove alleged cancerous lymph nodes. The sulfur colloid injection infected the Plaintiff's breast tissue causing inflammation, bleeding, and a foul odor of eggs (Exhibit E). The sulfur colloid caused the Plaintiff's breast to shrink several cup sizes. The sulfur colloid caused damage to the Plaintiff's pleura (Exhibit F), requiring surgical procedures. The Plaintiff had fluid between the chest and lungs. A thoracentesis was performed, not pleurodesis. The Plaintiff's white blood cell count did not indicate disease in the Plaintiff's body or breast.

5. On March 18 and 19, 2010, Defendant Paul Hergenroeder, conspired to cover up the mistakes of Defendants Natalie Joseph, Amer Khiyami, and Stephen W. Tamarkin and did not inform the Plaintiff, Carletha Stiner that she was not in need of chemotherapy or radiation due to the fact that the alleged breast cancer in the Plaintiff's breast was erroneous. The Plaintiff had been prescribed tamoxifen tablets approximately three to four weeks after the January 20, 2010 surgery with the understanding it would be prescribed for five (5) years. Defendant Paul Hergenroeder stated he had not consulted with Defendant Natalie Joseph about the Plaintiff's case during the first office visit. The Defendant Natalie Joseph scheduled another visit for the Plaintiff to again see Defendant Paul Hergenroeder who then prescribed one bottle only of tamoxifen, with

no refill. When the Plaintiff contacted Defendant, Dr. Natalie Joseph to get another prescription, the Plaintiff was asked, "Where did you get the pills from, you need radiation." Only then did the Defendant Natalie Joseph schedule an appointment with Defendant Leonidas Castro, MD., who also did not understand why the Plaintiff was even in his office. The Plaintiff had to explain to both defendants, Drs. Paul Hergenroeder and Leonidis Castro that Defendant Dr. Natalie Joseph had referred the Plaintiff for radiation and chemotherapy. The Defendant knew the Plaintiff's white blood cell count did not indicate disease.

6. On March 23, 2010, Leonidas Castro, MD., conspired to cause bodily harm to the Plaintiff Carletha Stiner when the Defendant chose to not inform the Plaintiff that chemotherapy was not needed because the diagnosis of breast cancer was not accurate. The Defendant, Dr. Leonidas Castro chose to state the Plaintiff did not want chemotherapy and implied the Plaintiff, Carletha Stiner had mental issues which affected the decision to not have chemotherapy (Exhibit H). Defendant Leonidas Castro said he could not see the Plaintiff, Carletha Stiner because she was late for the appointment and the Plaintiff needed to reschedule. The Plaintiff stopped at the front desk to reschedule but was informed the Plaintiff would receive a call with an appointment if it is necessary. The Plaintiff did not receive a call and did not call again. The Plaintiff's white blood cell count did not indicate disease in the breast.

7. On May 1, 2012, at approximately 11:17 am, Defendants Joseph Cooper, DO., and John Lazo, MD., conspired to cover up a misdiagnosis of breast cancer by recommending the Plaintiff, Carletha Stiner follow-up at the Cleveland Clinic cancer center for oncology

4

services, knowing the alleged tumor in the Plaintiff's right breast was not diseased based on the Plaintiff's white blood cells count.

8. On May 7, 2013, Defendant Holly Dushkin, M.D. conspired to cover up the mistaken diagnosis of breast cancer by confirming the diagnosis and attributing the Plaintiff's shrunken breast to a mastectomy (Exhibit I), which the Plaintiff has no knowledge of. The damage caused by the injection of sulfur colloid was referred to an oncologist to administer unneeded chemotherapy. The alleged recurring breast cancer has involved the pectoralis muscle (Exhibit J), which is the thick, fan shaped muscle that lies under the breast. What kind of recurring/metastatic breast cancer tumor involves a muscle under the breast and under the armpit. Such rare tumors may mimic malignant breast tumors. It is not a breast cancerous tumor, it is the sulfur colloid injection. The Plaintiff's white blood cells count does not indicate disease.

9. On July 24, 2013, Defendant Vundyala Reddy, MD, conspired against the Plaintiff, Carletha Stiner by continuing to cover up the wrong diagnosis of breast cancer by providing Abraxan Chemotherapy to the Plaintiff, which ultimately "scattered" the sulfur colloid within the Plaintiff's body (Exhibit K), rather than "shrinking" the alleged "tumor" as chemotherapy does.

10. On July 10, 2012, at approximately 8:52 pm., unknown phychiatric, MD., conspired against the Plaintiff, Carletha Stiner when the Defendant, in a ten minute consultation (Exhibit L), determined the Plaintiff was mentally unstable due to the Plaintiff's disbelief of the diagnosis of breast cancer and prescribed psychotic medicine.

11. On July 11, 2013, Plaintiff Carletha Stiner was admitted into the Medical Center of Central Georgia and was treated for a collapsed lung caused by retained fluid as a result of a medical condition (Exhibit M) which causes constant flare-ups. The Defendants are claiming the injury to the Plaintiff's chest area was caused by metastatic breast disease due to the cancerous tumor which has grown so extensively that it caused the breast to shrink, the legions to grow on the exterior of the breast, and caused the hole in the chest because the Plaintiff has mental issues and cannot understand what the breast cancer is. The injury is a result of the sulfur colloid injection. According to Taber's Cyclopedic Medical Dictionary, sulfur, colloid, alkaloid, leukocyte, and breast cancer are defined as follows:

a. Sulfur: A pale yellow, crystalline element; it burns with a blue flame, producing sulfur dioxide. Sulfur deficiency produces dermatitis and imperfect development of hair and nails. A deficiency of cystine or cysteine proteins in the diet inhibits growth and may be fatal. Tissue oxidation of cystine forms inorganic sulfate if the protein intake is sufficient.

b. Colloid: A gluelike substance such as a protein or starch whose particles, when dispersed as much as possible in a solvent, remain uniformly distributed and do not form a true solution.

c. Alkaloid: One of a group of organic alkaline substances (such as morphine or nicotine) obtained from plants. Alkaloids react with acids to form salts that are used for medical purposes.

6

d. Leukocyte: A white blood cell or corpuscle which is the primary effector cell against infection and tissue damage. These cells neutralize or destroy organisms and act as scavengers, cleaning up damaged cells. When leukocytes are killed along with the pathogenic organisms they have destroyed, the resulting material is called pus, commonly found at the site of localized infections. Pus that collects because of inadequate blood or lymph drainage is called an abscess. Clinically, serum white blood cells counts are important in detecting infection or immune system dysfunction. An elevated leukocyte count (leukocytosis) indicates an acute infection or disease process, whereas a decrease in the number of leukocytes indicates either immunodeficiency or an overwhelming infection that has depleted white blood cell stores.

   (1) Neutrophils, fifty-five (55) to seventy (70) percent, are the most numerous white blood cells and are a primary effector cell in inflammation. Identified by staining purple.

   (2) Eosinophils, one (1) to three (3) percent of total white blood cells destroy parasites and are involved in allergic reactions. Identified by staining red.

   (3) Basophils, less than one (1) percent of all white blood cells are part of the inflammatory response to injury. Identified by staining blue.

   (4) Monocytes, three (3) to eight (8) percent of white blood cells become macrophages and phagocytize pathogens and damaged cells, especially in the tissue fluid.

   (5) Lymphocytes, twenty (20) to thirty-five (35) percent of white blood cells have several

      functions: recognizing foreign antigens, producing antibodies, suppressing the immune response to prevent excess tissue damage, and becoming memory cells. Leukocytes in the spleen and lymph nodes may become lymphocytes or monocytes.

e. Breast cancer is a malignant neoplasm of the breast. Positive diagnosis can be made only by obtaining tissue for microscopic examination. The type of treatment, whether surgical, chemotherapeutic, or both, is determined by the extent of the disease, the patient's age, and her decisions. The amount of tissue to be removed remains controversial. Lumpectomy removes only the cancerous portion of the breast and axillary nodes; radiation or chemotherapy are adjuvant therapy.

f. The results of the Plaintiff, Carletha Stiner's CA 27.29 (Exhibit N) blood count is 40 on August 17, 2012, which is before any chemical treatment for the Plaintiff's breast has been administered. On October 22, 2012 the results rose to 58.8. On December 3, 2012, the count rose to 73.5. On December 13, 2012, the count rose to 79.8, which is during two (2) months of taking tamoxifen tablets. Any number below 40 is considered normal, while a count higher than 40 can be the cause of benign breast disease. The CA 27.29 is used to determine if the breast cancer has spread to other parts of the body, which is called metastasis. The Plaintiff's white blood cell count does not indicate disease in the Plaintiff's body or breast.

g. The Plaintiff, Carletha Stiner had no pain or concerns and had never verbally or in writing complained about her breast to family, friends, or medical personnel prior to or during this alleged breast cancer diagnosis. The Plaintiff's white and red blood counts have been within normal range prior to and after the January 20, 2010 alleged breast

cancer surgery (Exhibit O). The Plaintiff's white and red blood counts did not fall below the normal blood count range until after chemotherapy treatments began (Exhibit P). The white blood cells are important in detecting disease. High and low blood counts are an indicator of disease and infection, but further testing is necessary to determine what disease or infection is present. The Plaintiff's blood count dropped after receiving abraxane chemotherapy treatments indicating the chemotherapy treatments are more hazardous to the Plaintiff.

12. On June 15, 2012, the Plaintiff's follow-up recommendation was for surgical consultation, not oncology services (Exhibit Q). The Plaintiff, Carletha Stiner went to the Florida Hospital emergency room and had a biopsy. The Plaintiff was recommended for surgical consultation, but was then directed to contact the Cancer Center of Florida immediately for treatment by the same doctor. The Plaintiff contacted the Cancer Center of Florida who informed the Plaintiff that the medical records forwarded do not indicate a need for the Cancer Center of Florida services and directed the Plaintiff back to the recommending surgeon. The Plaintiff's white blood cells count did not indicate disease in the Plaintiff's breast.

13. The Plaintiff, while seeking medical assistance for the breast issue at the Florida Hospital, also sought treatment at the Veteran's Administration Medical Center and received prednisone (steroid) dose pack, for an eye infection, which actually affected the Plaintiff's right breast. The Plaintiff had not received any chemotherapy treatment at that time. After taking the prednisone tablets for only two (2) days, the Plaintiff's legions on the exterior of the breast dried up, shrank considerably, and the odor

dissipated (Exhibit R). After the Plaintiff completed the prednisone dose pack, the color of the Plaintiff's breast had nearly returned to its natural color. The Plaintiff's breast was black and leaked pus and some blood. The inflammation in the Plaintiff's breast flared up soon after the Plaintiff stopped the prednisone dose pack.

14. The Plaintiff was again prescribed prednisone for an eye infection while receiving chemotherapy at the Northside Hospital Cancer Institute. The prednisone again affected the Plaintiff's right breast. The Plaintiff was receiving home care assistance and had received six (6) abraxane chemotherapy treatments which was slowly clearing up the infection. The prednisone cleared up the Plaintiff's legions within seven (7) days. The Plaintiff's home care assistance stopped immediately after taking the prednisone.

15. Based on the controversial evidence the Plaintiff has received from the onset of this diagnosis, Carletha Stiner is compelled to seek assistance and restitution from the courts. The Plaintiff, Carletha Stiner, and her family have been and continue to be traumatized by the careless medical treatment. The Plaintiff still requires medical treatment and the Plaintiff's white blood count does not indicate disease.

16. The Plaintiff, Carletha Stiner after asking various doctors, "Where is my right breast, what happened to it, why is it smaller and hard with legions on the outside", was told by Dr. David Molthrop, "The abscesses on the Plaintiff's exterior breast were the cancer tumors which "pushed through" or "popped out" the breast." Dr. Shenin Sachedina said, "The tumor had grown beyond my breast area and was inoperable." An unknown doctor said, "They were cancer tumors spreading and growing on the outside of the Plaintiff's right breast." Dr. Holly Dushkin stated, "The breast was small due to a

mastectomy." Dr. Conti stated, "The breast cancer tumor was so big that it absorbed the Plaintiff's breast". Naturally, a tumor growth that large within the breast would make the breast larger, not smaller. The sulfur colloid injection hardened and the acid burned the breast tissue which shrunk the Plaintiff's right breast and caused the physical and mental damage.

17. On or about July 11, 2012, the Plaintiff Carletha Stiner was informed by Defendant Dr. Vundyala V. Reddy that the Plaintiff would be dead within a year without chemotherapy to shrink the alleged stage IV cancerous tumor. The Plaintiff has received seven (7) abraxane chemotherapy treatments. The Plaintiff requested validation or proof that the abraxane chemotherapy treatments were in fact shrinking the alleged tumor and was informed on or about October 24, 2013 that the alleged tumor was "scattering" within the right and left breast (Exhibit K). Exhibit K is accompanied by the Plaintiff's August 1, 2006 mammogram report which also states moderate fibroglandular tissue, but with no masses and calcifications or radiographic evidence. Tumors should shrink, not scatter. The conspiracy to cover up a botched medical diagnosis by insisting chemotherapy was necessary to avoid the damage has not been confirmed by the mammogram results (Exhibit K) which does not state the alleged tumor is shrinking, as it should. The Plaintiff's blood count did not indicate disease in the Plaintiff's body.

18. On June 15, 2012, at 07:36 am, Juan Sauer, MD., recommended the Plaintiff for surgery consultation. When the Plaintiff contacted the Defendant for consultation, the Plaintiff was directed to go directly to the Cancer Center of Florida. The Plaintiff, Carletha Stiner contacted the Cancer Center and was informed the Plaintiff's medical record did not

11

indicate a need for oncology services and for the Plaintiff to report back to a surgeon. Defendant Juan Sauer refused to make an appointment for surgery consultation. The Plaintiff's blood count did not indicate disease.

19. One examination result states the Plaintiff had a mastectomy on January 20, 2010, (Exhibit I).

20. Exhibit D states sulfur colloid was injected into the Plaintiff's breast.

21. Exhibit K states lime salt is present.

22. Exhibit C states lymph node removal and lumpectomy on January 20, 2010.

23. The Plaintiff is seeking court order to surgically remove the sulfur colloid tumor and scattered tumor from the breast without the use of unnecessary chemical weapons. The Plaintiff, Carletha Stiner's white blood count does not indicate disease in the Plaintiff's breast. The use of steroids actually treated the alleged malignant tumors.

24. The Plaintiff is seeking financial restitution from the Defendants for pain and suffering, and for the lack of companionship from family and friends caused by the confusing and controversial diagnosis and medical treatment of breast cancer and schizophrenia.

Respectfully Submitted,

*Carletha Stiner*

CARLETHA STINER, Plaintiff